# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NATHAN J. HAWKEY,
       **Plaintiff,**

                                     **Civil Action 2:16-cv-667**
     **v.**                             **Judge George C. Smith**
                                     **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

       **Defendant.**

## REPORT AND RECCOMENDATION

Plaintiff, Nathan J. Hawkey, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply in Support (ECF No. 14), the Commissioner's Sur-Reply in Opposition (ECF No. 16) and the administrative record. (ECF No. 7.) For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the administrative law judge under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed his application for benefits on November 7, 2012, alleging that he had been disabled since June 15, 2012. (R. at 174–176.) Plaintiff's application was denied initially on

February 20, 2013 and upon reconsideration on June 6, 2013.  (R. at 72, 95.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 112.)

Administrative Law Judge James I.K. Knapp ("ALJ") held a hearing on January 7, 2015, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 29–70.)  Medical Expert Dr. Karl Manders and Vocational Expert Mark Pinti also appeared and testified.  (R. at 29–70.)  On January 29, 2015, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11–28.)  On May 16, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–6.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff, who was thirty-seven at the time of the ALJ's decision (R. at 28, 174), testified that he graduated from high school and had three years of college education.  (R. at 33.)  He testified that he lives with his wife.  From 1997 to 2008, Plaintiff worked as an auto laborer on an assembly line.  According to Plaintiff, he stopped working because the company moved out of state.  (R. at 33.)   He drives a car about three or four times a week.  On a normal day he reads and watches television, and he also enjoys playing video games.  (R. at 39, 42.)  About twice a week he helps prepare meals or clean up after meals, once a week he sweeps and mops, and once a week he does laundry.  He works in his garden about once or twice a month and usually mows the lawn using a riding mower.  (R. at 42.)  About once a month Plaintiff goes grocery shopping and once a week he attends church.  (R. at 40–41.)  Plaintiff is also an elder in the congregation.  He testified that someone else is handling his elder responsibilities but that he attends meetings of the elders once every two months.  (R. at 41.)

He testified that he suffers from multiple sclerosis ("MS"), and his symptoms include fatigue, trouble with his hands, trouble with balance, trouble concentrating, and neuropathy in his feet. (R. at 34–36.) Plaintiff has been diagnosed with relapsing remitting MS. He testified that every four or five months he relapses, which causes him to experience a myriad of symptoms. After and between relapses he suffers from fatigue. Plaintiff testified that "the fatigue is a constant. I never seem to get any relief from the fatigue itself. I never feel like I have energy." (R. at 47.) One treatment Plaintiff receives for his MS involves a monthly infusion of Tysabri. (*Id.*) He testified that he receives the infusion at the Ohio State Wexner Medical Center and that each infusion takes about three hours. (*Id.*) According to Plaintiff he does not notice any side effects the first few hours after the infusion, "but probably about six hours or so after the infusion, the fatigue hits very hard. And so I can be down for several days after the infusion itself." (R. at 47–48.)

## B.    Vocational Expert's Testimony

The vocational expert Mark Pinti ("VE") testified that with the limitations imposed by the ALJ for his residual functional capacity ("RFC"), Plaintiff could no longer perform his past work was as an automotive worker, which the VE classified as a medium and unskilled position. (R. at 65–66.) The VE testified that Plaintiff could perform work as a ticket seller, with 200 jobs in the local economy and 225,000 jobs in the national economy; as a parking lot cashier, with 200 jobs in the local economy and 200,000 jobs in the national economy or as a folder, with 100 jobs in the local economy and 70,000 jobs in the national economy. (R. at 66.)

## C.    Medical Expert's Testimony

The medical expert Dr. Karl Manders testified that Plaintiff has MS, and the difficulty with assessing MS is "a person can have a diagnosis of multiple sclerosis because he has the so-

called lesions or planks in the brain, and clinically able to live a perfectly normal life without any recurrent attacks or exacerbations." (R. at 52.) Dr. Manders further testified that Plaintiff does not meeting the Listing 11.09, for multiple sclerosis, because he does not have persistent visual impairments, diagnostic evidence of fatigue demonstrating muscle weakness, or demonstrated disorganization of motor functions in his gait. (R. at 53.) Dr. Manders acknowledged the objective finding of ataxia in Plaintiff's fingers, but noted that it was found to be mild. (R. at 55.)

When asked if he disagrees with the opinion of Plaintiff's treating physician that due to Plaintiff's fatigue he would be unable to maintain a normal work schedule, Dr. Manders responded that he did not disagree, but that the fatigue should be confirmed by a specific examination. "The fatigue is the most common symptom and that would significantly impact his health related quality of life, including a negative impact. That's correct, I would agree with that, if again, the fatigue is confirmed by examination, which the listing demands . . .[t]he complaint is there, and I don't doubt the credibility of your claimant . . . ." (R. at 61–62.)

### III.   MEDICAL RECORDS[1]

**A.   Dr. Boster**

Plaintiff's treating physician Dr. Aaron Boster is a board-certified clinical neuroimmunologist specializing in multiple sclerosis. In June of 2012 Plaintiff underwent an MRI, which reflected the existence of multiple sclerosis. (R. at 256.) As explained in Dr. Boster's September 12, 2012 treatment notes,

> [Plaintiff's] [b]rain MRI contains a mild burden of disease with lesions in classic locations for MS including periventricular and infratenforial locations. Neuroligic exam is consistent with an EDSS of 2.0 due to limb ataxia and

[1] The Court limits its analysis of the medical evidence to the issues raised in Plaintiff's Statement of Errors, namely the weight given by the ALJ to Dr. Boster's medical opinion.

4

dysmetria. At this time, he does not meet full 2010 McDonald diagnostic criteria for MS and therefore his diagnosis is consistent with the Clinically Isolated Syndrome. Based on his MRI, he has an ~85% chance of going on to develop MS in the next 20 years. If he develops a new relapse or has a new lesion on MRI at any time he will meet full criteria for MS.

(*Id.*)

Dr. Boster's treatment notes also revealed that Plaintiff suffered from a relapse that June. During the episode Plaintiff experienced double vision, dizzy spells, and nausea. (R. at 263.) Due to his symptoms, Plaintiff went to the emergency room at Mercy Hospital in Urbana. (*Id.*) There he was referred to Dr. Chadha in neurology, who obtained additional blood tests and the MRI of the brain.

Plaintiff had a follow-up visit with Dr. Boster in October 2012. (R. at 255–62.) Plaintiff reported that he felt fatigued, but denied weakness. (R. at 258.) Plaintiff visited Dr. Boster again in October 2012. Dr. Boster noted that Plaintiff experienced dizziness and complained that his balance was not as good as it used to be. (R. at 288.) Plaintiff returned to Dr. Boster in January 2013. Plaintiff reported fatigue, weakness, heat sensitivity, and difficulty thinking and memory. (R. at 359–62.) In May 2013, Plaintiff again reported to Dr. Boster that he was experiencing fatigue, weakness, heat sensitivity, and difficulty with thinking and memory. (R. at 357.)

Dr. Boster opined in a letter dated April 23, 2014, that Plaintiff has been disabled since October 2012. He reported that Plaintiff had a diagnosis of relapsing remitting multiple sclerosis. (R. at 392.) He wrote that Plaintiff's symptoms include dysarthria, numbness, weakness, moto fatigue, incoordination, poor balance, Lhermmite's Phenomenon, difficulty with thinking and memory, pathologic fatigue, depression, heat sensitivity, poor sleep, and headaches. (*Id.*) Dr. Boster further opined that Plaintiff suffers from significant fatigue and "[d]ue to this fatigue, Mr. Hawkey is not able to maintain a normal work schedule. (*Id.*)

# IV.    ADMINISTRATIVE DECISION

On January 29, 2015, the ALJ issued his decision.  (R. at 11–24.)  At step one of the sequential evaluation process,[2] he found that Plaintiff had not engaged in substantially gainful activity since June 15, 2012, the alleged onset date of disability.  (R. at 13.)  The ALJ found that Plaintiff had the severe impairments of multiple sclerosis, neuropathy of undetermined etiology, and mild exogenous obesity.  (*Id.*)  He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to the following restrictions and limitations: (1) lifting restricted to 10 pounds frequently and 20 pounds occasionally; sitting restricted is 1 hour at a time, but that he can sit for a total of 8 hours per day with an opportunity for brief breaks or changes to standing position up to five minutes on an hourly basis; (3) standing/walking combined were restricted to 30 minutes at a time and a total of four hours in a workday; (4) no greater than occasional climbing of stairs or any climbing of

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

ladders, ropes, or scaffolds; (5) no job requiring a good ability to maintain balance or any walking on an uneven surface; (6) no greater than frequent fingering with either hand; (7) no work at unprotected heights or involving operation of moving machinery; and (8) no exposure to hot temperature extremes.

(R. at 16.)

In reaching this determination, the ALJ found that Dr. Boster's opinion "is not entitled to controlling or deferential weight under the Regulations." (R. at 20.) The ALJ reasoned "Dr. Boster's opinion has not been given controlling or deferential weight, because Dr. Manders' opinion is more consistent with the objective medical evidence in the record and, because Dr. Boster's opinion that the claimant is disabled is largely based on the claimant's subjective complaints of weakness and fatigue which, Dr. Manders said had not been tested by a neurologist and quantified in terms of its relative severity." (*Id.*) The ALJ gave Dr. Manders' opinion "[g]reater weight," reasoning that Dr. Manders "supported his opinion with direct citations to the medical record and the evidence which had been summarized and discussed herein above."

In particular, the ALJ narrowed in on the lack of testing confirming Plaintiff's fatigue. (R. at 54.) He found Dr. Manders' testimony particularly convincing to the effect that muscle testing involving repetitive movements could diagnostically show fatigue and that Dr. Boster did not perform such test. (R. at 18–19.) Considering Plaintiff's age, education, work experience and RFC, and relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs existing in the national economy. (R. at 24.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42

U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial

evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286

(6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must

"take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v.

Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of

the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th

Cir. 2007)).

# VI.    ANALYSIS

In his Statement of Errors, Plaintiff argues that the ALJ violated the treating physician rule by improperly discrediting Dr. Boster's treating source opinions and that the ALJ erroneously relied on the testimony of the medical expert.

An ALJ is required to "evaluate every medical opinion" against a variety of factors, including the nature of the treatment relationship, the supporting medical basis for the opinion, and the overall consistency with the record as a whole.  20 C.F.R. §§ 404.1527(d) and 416.927; *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 438-39 (6th Cir. 2012).  An opinion from a treating source is "'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician." *Id.* (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)).  Non-treating sources who physically examine a claimant but who do not have or did not have an ongoing treatment relationship with the claimant fall next along the continuum in terms of weight. *Id.* (citing *Smith*, 482 F.3d at 875).  Finally, a non-examining source who provides an opinion "based solely on the review of the patient's existing medical records [] is afforded the least deference." *Id.*  (citing *Smith*, 482 F.3d at 875); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) ("As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination.").

To qualify as a treating source, a physician must have "examined the claimant . . . [and have] an 'ongoing treatment relationship' with [the claimant] consistent with accepted medical practice." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Even if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must still meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2); 404.927(d)(2). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to

explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend*, 375 F. App'x at 551 (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The Undersigned finds that the ALJ violated the treating physician rule by not providing sufficient good reasons for declining to give Plaintiff's treating physician controlling or deferential weight. *See, e.g.*, *Courtney v. Colvin*, 2013 U.S. Dist. (S.D. Ohio Nov. 19, 2013) *R&R adopted by* 2013 WL 6440199, at *10 (S.D. Ohio Dec. 9, 2013) (finding that the ALJ failed to provide good reasons for rejecting the treating physician's opinion, who treated plaintiff for multiple sclerosis, and granting of deferential weight to the nonexaming medical expert.) Here, the ALJ acknowledged that Dr. Boster is Plaintiff's treating physician for his MS at OSU Medical Center's Multiple Sclerosis Clinic. (R. at 19.) He then considered Dr. Boster's opinion, but rejected it. The ALJ did not assign Dr. Boster's opinion a specific weight but rather found it was "not entitled to controlling or deferential weight." (R. at 20.) Despire the fact that the ALJ found no inconsistencies in Dr. Boster's opinion, he decidedly gave the treating physician's opinion less than controlling weight merely because he found the medical expert's opinion more consistent with the objective evidence and further found the Dr. Boster's opinion relied on Plaintiff's subjective complaints. (*Id.*) In failing to do so, the ALJ violated applicable Social Security regulations. *See* 20 C.F.R. 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported . . .and is not inconsistent with the other substantial evidence in your case record, we will give it

controlling weight."). The ALJ's reasoning was insufficient and therefore his rejection of Dr.

Boster's opinion was not supported by substantial evidence.

Listing 11.09 for multiple sclerosis at the time of the hearing was as follows:

**11.09 Multiple Sclerosis.** With:
A. Disorganization of motor function as described in 11.04B; or
B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Dr. Bolster opined that Plaintiff experiences significant fatigue and that "[d]ue to this fatigue,

Mr. Hawkey is not able to maintain a normal work schedule." (R. at 392.) Medical evidence

provided by Dr. Boster supports a determination that Plaintiff meets Listing 11.09 for multiple

sclerosis. Dr. Boster who specializes in the treatment of MS, has served as Plaintiff's treating

physician for MS from at least 2012–2014. Dr. Boster's medical notes throughout that time

period reflect Plaintiff was experiencing severe fatigue. For example, Dr. Boster's notes from

October 2012 state Plaintiff "is currently experiencing significant fatigue and sleep difficulties.

We recommend symptomatic management and prompt initiation of disease modifying therapy

for MS. After an extensive discussion of available disease modifying therapies, he has elected to

start fingolimod." (R. at 260.) Such observations are reflected throughout Dr. Boster's treatment

notes. (R. at 350–90, 392, 396–420.)

Dr. Boster further detailed Plaintiff's symptoms in a letter he wrote on April 23, 2014.

(R. at 392.) In the letter he reported that Plaintiff's symptoms from MS "include dysathria,

numbness, weakness, motor fatigue, incoordination and poor balance, Lhermmite's

Phenomenon, difficulty with thinking and memory, pathologic fatigue, depression, heat

sensitivity, poor sleep and headaches." (*Id.*) Dr. Boster emphasized that Plaintiff "suffers from

significant MS related fatigue and muscle weakness." (*Id.*)  According to both Dr. Boster and

Dr. Manders, fatigue is the most common symptom experienced by MS patients.  Dr. Boster

wrote that fatigue

> significantly impacts health related quality of life, including a negative impact on
> the ability to work.  Additionally, it is a major cause of unemployment (Kantarci
> O, Wingerchuk D, 2008).  Due to this fatigue, Mr. Hawkey is not able to maintain
> a normal work schedule.  This fatigue, motor and pathologic has persisted since
> 10/8/2012 and progressed despite compliance with therapy.

 (R. at 392.)

At the hearing, the medical expert Dr. Manders testified that he "did not disagree" with

Dr. Bolster's opinion.  He suggested only that the fatigue should be confirmed by a specific

examination.  "The fatigue is the most common symptom and that would significantly impact his

health related quality of life, including a negative impact.  That's correct, I would agree with

that, if again, the fatigue is confirmed by examination, which the listing demands . . . [t]he

complaint is there, and I don't doubt the credibility of your claimant . . . ."  (R. at 61–62.)  Dr.

Manders, however, never had the opportunity to examine or personally observe Plaintiff and

further only disagreed with Dr. Boster's opinion because no specific fatigue testing took place,

not because of any inconsistencies within Plaintiff's medical records.

The ALJ did not provide sufficient good reasons for giving Dr. Manders' opinion

"greater weight" while finding that Dr. Boster's opinion was "not entitled to controlling or

deferential weight."  SSR 96-2p, 1996 WL 374188 (If an ALJ decides to discount or reject a

treating physician's opinions, he must provide "good reasons" for doing so).   The ALJ did not

find Dr. Boster's opinion inconsistent with the evidence.  He instead justified the greater weight

given to Dr. Manders' by finding Dr. Manders' opinion "more consistent" with the record. (R. at

20.)  Weighing Dr. Boster's specialization, length of the treatment relationship, the frequency of

examination, and the nature and extent of the treatment relationship with Plaintiff, the Undersigned finds the ALJ's reasoning insufficient and thus not supported by substantial evidence. 20 C.F.R. 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). As discussed at length above, Dr. Boster, a board-certified clinical neuroimmunologist who specializes in MS has treated Plaintiff's MS since 2012 while, Dr. Manders never examined him. Accordingly, the ALJ's decision is not supported by substantial evidence.

In sum, it is **RECOMMENDED** that Plaintiff's contentions of error be **SUSTAINED**.

## VII.    CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECCOMENDS** that the Court **REVERSE** the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 11, 2017

            /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE